IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____
                                             )
IN RE NETBANK, INC.                )        Civil Action No.
SECURITIES LITIGATION         )        1:07-cv-2298-BBM
_____)

# MEMORANDUM IN SUPPORT OF
# MOTION TO REOPEN CASE AND FOR RULE 16 CONFERENCE

Michael R. Smith (Georgia Bar No. 661689)
*mrsmith@kslaw.com*
Benjamin Lee (Georgia Bar No. 443082)
*blee@kslaw.com*
1180 Peachtree Street, NE
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5100

Attorneys for Defendants

## I.   INTRODUCTION

The parties' recent efforts to mediate this case concluded on September 9, 2009, without an agreement to settle the case. Defendants hereby request that proceedings in this case be reopened so that the parties can proceed with discovery and litigation of Plaintiff's claims on an orderly timetable.[1]

In addition, Defendants request that the Court schedule a conference pursuant to Federal Rule of Civil Procedure 16 to address pressing issues that must be resolved promptly in order to facilitate the orderly and efficient conduct of discovery in this case. Most importantly, Plaintiff should be required to immediately specify which, if any, of the **_one hundred thirty-six_** individuals listed in Plaintiff's Initial Disclosures will in fact supply information supporting

---

[1] Defendants are mindful of the text of the Court's September 4, 2009 Order stating: "The Plaintiffs may move to reopen this action any time within 30 days of the conclusion of the mediation." Docket No. 113. Defendants respectfully submit, however, that, in light of the conclusion of the mediation without an agreement to resolve the case and the operative discovery and scheduling deadlines, there is no reason to further delay reopening the proceedings. During a September 22, 2009 telephone call, Defendants communicated this position to Plaintiff and inquired when Plaintiff intended to move to reopen the case. On the call, Plaintiff refused to commit to move to reopen the case prior to the expiration of the thirty-day period referenced in the Court's September 4 Order. Accordingly, Defendants advised Plaintiff that they would move the Court this week to reopen the case. Just this day, Plaintiff sent a letter changing course and apparently attempting to forestall any action by Defendants with the vague suggestion that he intends to move to reopen the case sometime "next week." *See* Ex. A.

Plaintiff's claims of securities fraud. Without greater specificity from Plaintiff on the critical topic of which, if any, witnesses will support Plaintiff's claims, Defendants will be hamstrung in their efforts to (1) make the necessary prompt and informed decisions regarding the scope and focus of their discovery efforts in the time remaining for discovery in this case and (2) assess Plaintiff's request that the parties jointly seek leave to further expand the number of depositions allotted to each side. Given that less than three months remain for fact discovery in this case, it is imperative that these matters be resolved sooner rather than later, and Defendants submit that a Rule 16 conference is likely the most efficient means to do quickly and efficiently resolve these issues and any other required to enable the parties to effectively allocate resources during the remaining fact discovery period.

Recent developments further underscore the need for prompt resolution of the uncertainty regarding the specific identities of any witnesses who purport to support Plaintiff's claims. Despite Plaintiff's consistent efforts to obscure the identities of any such persons, including notably the "confidential witnesses" to whom various allegations in the Complaint are sourced, Defendants counsel have contacted several of the individuals listed in Plaintiff's Initial Disclosures, including each of the six "confidential witnesses" whom Plaintiff has only recently identified (under order of the Court compelling the same). Contrary to Plaintiff's

representation in his Initial Disclosures that these individuals will provide "support" for his claims, each one of the "confidential witnesses" has completely and unambiguously rejected Plaintiff's claims that Defendants – or *anyone* at NetBank – engaged in any acts of fraud. Further, each of the so-called "confidential witnesses" has since executed a sworn statement rejecting allegations sourced to them in the Complaint as presenting an inaccurate and "misleading impression of [their] views."

Particularly where even the "confidential witnesses" to whom Plaintiff attributed a number of the key "factual" allegations in his Complaint have indicated that they *dispute* rather than support Plaintiff's claims, Defendants should not be put to a needle-in-a-haystack search to attempt to determine whether there are in fact *any* witnesses among the 136 identified by Plaintiff who purport to support Plaintiff's claims, and if so, who such persons are. Instead, Plaintiff should specify, as the Federal Rules require, which individuals Plaintiff reasonably expects will in fact support his claims so that Defendants may make reasoned and informed decisions concerning whom they will seek to depose using the depositions they are allotted under operative discovery guidelines set by this Court and how Defendants will focus their efforts and resources in the conduct of discovery during the remaining allotted period.

In addition, Defendants need to understand how many of Plaintiff's 136 potential witnesses truly purport to have information supporting Plaintiff's claims in order to meaningfully assess Plaintiff's request that the parties agree to further expand the number of depositions each side may take. As less than three months now remain for the parties to complete fact discovery under the present schedule, there is no room left for delay in resolving the necessary scope and focus of fact discovery. Defendants believe that a Rule 16 conference is the most efficient way to promptly resolve these and any other issues needed to facilitate timely completion of discovery and litigation of this action and avoid unnecessary waste of the resources of the parties and this Court.

## II.  RELEVANT FACTUAL BACKGROUND

### A.  The Recent Failed Mediation And The Remaining Discovery Schedule

On September 4, 2009, the Court granted the parties' joint motion to (1) temporarily stay proceedings in this case pending completion of a scheduled mediation; and (2) extend various discovery and other case deadlines. *See* Docket No. 113. On September 9, 2009, the parties' mediation efforts concluded without the parties reaching an agreement to settle the case.

Under the Court's September 4 Order, fact discovery in this case is set to end on December 15, 2009. Consistent with a prior Court order, each side may

take up to fifteen depositions during the less than three months that presently remain for completion of fact discovery. *See* Docket No. 74. Plaintiff has indicated that he may seek leave to expand his allotted number of depositions beyond fifteen. *See, e.g., id.* Defendants presently believe that fifteen depositions per side should be more than sufficient, but that belief is contingent in part upon Defendants' need for more specificity from Plaintiff regarding which, if any, witnesses Plaintiff contends will support Plaintiff's claims of fraud, as detailed in the following subsection.

> **B.    The Lack Of Clarity Concerning Which Witnesses, If Any, Will Support Plaintiff's Claims**

In his Initial Disclosures, Plaintiff lists ***one hundred thirty-six*** individuals whom Plaintiff asserts are "likely to have discoverable information that [Plaintiff] may use to support his claims." Ex. B, pp. 4-5 & Schedule A thereto. Plaintiff's lengthy list encompasses persons apparently residing in various states across the country, including Washington, Oregon, California, Arizona, Texas, Illinois, Massachusetts, Connecticut, New Jersey, New York, Maryland, Virginia, North Carolina, Alabama, Florida, and South Carolina, in addition to Georgia. *Id.* At the time Plaintiff served his Initial Disclosures, he provided a phone number for just

*one* of the 136 individuals listed.[2] *Id.* Although neither Defendants nor their attorneys have yet been able to reach each person on Plaintiff's extensive list, Defendants' counsel have spoken with several of the individuals identified, and have yet to identify a single person who purports to have information supporting Plaintiff's claims.

Defendants' experience to date is best illustrated by counsel's recent discussions with each of the so-called "confidential witnesses," each of whom is included in Plaintiff's Initial Disclosures as among the list of 136 witnesses likely to have information supporting Plaintiff's claims.[3] After Plaintiff finally identified these "confidential witnesses" on August 21, 2009 (pursuant to the Court's order compelling same), *see* Pl. Suppl. Interrogatory Resp., copy attached as Ex. D,

---

[2] On September 24, 2009, Defendants received from Plaintiff an amended list of witness, in which Plaintiff purports to have provided phone numbers for most of those persons identified therein. *See* Ex. C. Plaintiff's amended list, however, still includes 136 purported possible witnesses.

[3] At the outset of discovery in this case, Defendants requested that Plaintiff identify the sources for each allegation contained in paragraphs 93, 104-06, 110, 112-13, 115, 118, 120, 131, 157-59, 160-62, 192-93, 218-19, 227, 279, 285, 289, 308, and 309 of the Complaint. Notwithstanding clear precedent from this Court requiring such disclosure, including a 2004 order in which Her Honor compelled the same law firm representing Plaintiff in this case to divulge the identities of confidential witnesses cited as sources for securities fraud allegations, *see In re CryoLife, Inc. Sec. Litig.,* No. 1:02-cv-1868-BBM, slip op., (N.D. Ga. Feb. 20, 2004) (Docket No. 67-3); *see also In re Theragenics Sec. Litig.*, 205 F.R.D. 631 (N.D. Ga. 2002), Plaintiff refused to specifically identify his confidential witnesses until compelled to do so by this Court's August 7, 2009 Order.

6

Defendants' counsel contacted the individuals identified to determine whether the allegations attributed to them accurately reflected their understanding of events. After learning (for the first time) that they had been cited as sources for allegations of securities fraud against the Defendants, ***every one*** of the six individuals Plaintiff identified has since executed a written statement, sworn to under penalty of perjury, completely and utterly disclaiming knowledge of any false or misleading statements or acts of fraud by Defendants.  *See* Exs. E - J.

Each confidential witness also stated under oath that the paragraphs of the Complaint attributed to him or her give a "misleading" impression of his or her true views, and disclaimed specific allegations in the Complaint purportedly attributed to him/her.  *Id.*  The sworn statements executed by the "confidential witnesses" reacting to, and in most cases flatly contradicting, the allegations attributed to them in the Complaint are illuminating.  For example, upon learning that she had been identified as the source for allegations in paragraph 279 of the Complaint that "Defendants Herbert and Gross, at a minimum, knew that the Company's underwriting guidelines were insufficient" and "[a]s a result, the reserves that NetBank knew or should have known were necessary were not established," Susan Cromley, NetBank's former Controller stated, under oath:

7

> *I do not agree with the allegations of ¶ 279 . . . . My view is that NetBank's reserves were always adequate and accurate when made, and when new information became available suggesting additional reserves were necessary, the necessary additions were made.*

Ex. F, ¶ 5(d) (emphasis added).  Similarly, and in stark contrast with allegations in paragraphs 159 and 289 of the Complaint that purport to attribute to her a view that Ernst & Young resigned as NetBank's outside auditors due to a disagreement with the Company relating to hedge accounting, *Ms. Cromley disclaimed any personal knowledge of the reasons for Ernst & Young's resignation*:

> *I have no personal knowledge of the specific reasons why Ernst & Young resigned as NetBank's auditors.  I had no discussions with Ernst & Young regarding the specific reasons they resigned, and was not told by anyone who did speak with them of the specific reasons why Ernst & Young resigned.*
>
> . . .
>
> *. . . I have no knowledge of the specific reasons why E&Y resigned as NetBank's auditors.*

*Id.* ¶ 5(b)&(e) (emphasis added).

The remaining sworn confidential witness statements attached here to as Exs. E-J are to similar effect and shatter the notion that the so-called "confidential witnesses" will "support" Plaintiff's claims.  In addition, each confidential witness stated under oath that he or she *was not* shown a draft of the Complaint or of the specific allegations attributed to him or her, *was not* otherwise asked to confirm the

8

allegations' accuracy prior to Plaintiff's filing of the Complaint, and *did not* agree to serve as a "witness" to support claims of securities fraud against the Defendants. *Id.* Indeed, two of the purported "confidential witnesses" stated that they agreed to speak to Plaintiff's investigator in order to clear up what they perceived as misconceptions that had been advanced concerning NetBank and/or the Defendants. *See* Exs. E & F, ¶ 4.

    **C.**    **Defendants' Request That Plaintiff Specifically Identify The Witnesses That He Contends Will Support His Claims**

On September 9, 2009, Defendants provided Plaintiff's counsel with copies of the sworn written witness statements obtained from the so-called "confidential witnesses" rejecting the allegations attributed to them. In light of the confidential witnesses' statements rejecting the allegations in the Complaint attributed to them and expressly disclaiming any knowledge of acts of fraud by Defendants or other NetBank employees, and in furtherance of Defendants' desire to focus their discovery efforts during the remaining time left for fact discovery in this case, Defendants' counsel wrote to Plaintiff's counsel September 15, 2009 to request that Plaintiff amend his Initial Disclosures to identify which, if any, of the ***one hundred thirty-six*** individuals listed will in fact support Plaintiff's claims of securities fraud. Ex. K. Counsel's letter stressed the need for Plaintiff to narrow his list of potential witnesses to enable Defendants to make informed decisions

concerning which, if any of these individuals to depose. *Id.* Defendants pointed out that the need for revision of Plaintiff's plainly overbroad list was particularly acute given that each of the six confidential witnesses identified on Plaintiff's list (as well as several others whom Defendants counsel had contacted) had indicated that they strongly dispute Plaintiff's fraud claims. *Id.*

Counsel for the parties held a telephone conference to discuss Defendants' request on September 22, 2009. Plaintiff's counsel refused to revise Plaintiff's disclosures, offering only to entertain the possibility of holding further discussions concerning potential removal of individuals specifically identified by Defendants as persons who will not support Plaintiff's claims. Plaintiff's proposal, of course, fails to address Defendants' concern that they should not be required to canvass Plaintiff's demonstrably over-inclusive list of 136 individuals to determine which, if any of them, purports to have information supporting Plaintiff's claims. Accordingly, and particularly in view of the limited amount of time left for fact discovery and the limited number of allotted depositions, Defendants were left without any choice but to seek relief from the Court.

During the September 22 teleconference, counsel for the Defendants also inquired when Plaintiff's counsel intended to request that proceedings in this case be reopened. Defendants' counsel communicated their position that, in light of the

failed mediation efforts, proceedings in the case should resume promptly to facilitate orderly completion of fact discovery in the limited time remaining to do so under the schedule set by the Court. Plaintiff's counsel would not commit to move to reopen the case prior to the October deadline for such action set by Court's September 4, 2009 Order. As such, Defendants informed Plaintiff that they would move to reopen the case this week. Today, Plaintiff sent a letter again changing course on the issue and saying he intends to move to open the case at some unspecified time during "next week." Ex. A.

## III.   ARGUMENT AND CITATION OF AUTHORITIES

### A.   Proceedings In This Case Should Be Reopened.

In light of the conclusion of the parties' mediation efforts on September 9, 2009 without an agreement having been reached to resolve the case, proceedings should be reopened promptly so that discovery and further litigation of Plaintiff's claim can proceed. Less than three months remain for the completion of fact discovery under the current schedule, and presently operative discovery guidelines contemplate that as many as thirty total depositions may be taken in that time. Moreover, Plaintiff has indicated that he may seek additional depositions beyond the fifteen presently allotted to each side.

Uncertainties regarding the identities of any witnesses who may purport to have information supporting Plaintiff's fraud claims continue to prevent Defendants from making an informed determination regarding whether they will need to seek leave to take more than fifteen depositions. Particularly given the amount of discovery to be completed during the remaining period and the uncertainties regarding the necessary scope and focus of discovery caused by Plaintiff's continuing refusal to identify which, if any witnesses will support his claims, there is simply no reason to delay reopening of proceedings at this point. To the contrary, such delay could only impede the parties' ability to complete fact discovery in an orderly and efficient manner within the remaining allotted time. The case should be reopened.

> **B.  A Rule 16 Conference Should Be Convened To Address Discovery Issues, Including Witness Identification, That Must Be Promptly Resolved To Facilitate Orderly And Efficient Discovery.**

In addition to reopening proceedings, the Court should convene a Rule 16 conference to address Defendants' contention that Plaintiff must specifically identify the witnesses, if any, who will actually support Plaintiff's claims so that Defendants can assess the necessity of deposing any such persons. Plaintiff's transparent efforts to frustrate Defendants' discovery efforts by hiding any supporting witnesses in a list of 136 people (a number of whom it is now clear will

not support Plaintiff's claims) flies in the face of the requirements of Rule 26(a), which is intended to provide notice to the opposing party of the key witnesses upon whom the disclosing party intends to rely in establishing his factual positions to "help focus the discovery that is needed, and facilitate preparation for trial or settlement." *See, e.g.,* Advisory Committee Notes to 1993 Amendments to Rule 26(a). The Court should exercise its discretion and authority under Rule 16 to convene a conference and direct Plaintiff to amend his witness disclosures to prevent Plaintiff's abusive tactics from prejudicing Defendant's discovery efforts.[4]

"Hide-the-ball" tactics similar to those employed by Plaintiff were held improper in *Sender v. Mann*, 225 F.R.D. 645 (D. Colo. 2004) (awarding sanctions where overbroad "laundry list" of potential witnesses in plaintiff's initial disclosures prevented defendants from making informed decisions regarding efficient use of their allotted depositions). There, as here, the plaintiff included in

---

[4] Rule 16 authorizes pretrial conferences to address, *inter alia*, the following:
- controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37;
- identifying witnesses and documents, scheduling the filing and exchange of any pretrial briefs, and setting dates for further conferences and for trial;
- facilitating in other ways the just, speedy, and inexpensive disposition of the action.

Fed. R. Civ. P. 16(c)(1)(F)-(G), & (P).

his Initial Disclosures a lengthy "laundry list" of potential witnesses far exceeding the number of depositions allotted to the defendants, thus unfairly leaving defendants "with the choice of either requesting a substantial number of additional depositions, with all of the additional costs, or hoping that they correctly guessed which of the approximately 300 [witnesses] would ultimately testify at trial." *Id.* at 655.  The court held that such tactics were inconsistent with plaintiff's obligations under Rule 26(a), observing that "Rule 26(a)(1) disclosures must be sufficiently detailed to allow Defendants to make intelligent decisions regarding how they will efficiently use the limited number of depositions permitted under the Rule 16 scheduling order." *Id.* at 656.  *Cf. Perkasie Indus. Corp. v. Advance Transformer, Inc.,* 143 F.R.D. 73, 76-77 (E.D. Pa. 1992) ("A party is not permitted to postpone identification of his own witnesses and the substance of their testimony until a critical point in the proceedings at which it will become extremely burdensome for his opponent to prepare effectively to meet them.").

     Defendants anticipate that Plaintiff may argue that his Initial Disclosures reflected Plaintiff's best efforts to identify potential witnesses early in the case before a substantial opportunity for discovery.  However, Rule 26 requires, among other things, that a party is required to make a "reasonable inquiry" to ensure that that his initial disclosures are "correct."  Fed. R. Civ. P. 26(g)(1); *see also Gucci*

*America, Inc. v. Costco Wholesale Corp.,* 2003 WL 21018832, at *2 (S.D.N.Y. May 6, 2003) (Rule 23(g) imposes an obligation to make a reasonable inquiry to ensure that the parties' disclosures are complete and accurate). At best, it is questionable whether Plaintiff made the required reasonable inquiry before identifying *136* potential supporting witnesses, six of whom have expressly and under oath rejected any claim that Defendants or other NetBank employees committed any acts of fraud, and disclaimed allegations specifically attributed to them in the Complaint.

Further, even if Plaintiff's laundry list of 136 people reflected Plaintiff's best effort, after the required "reasonable inquiry," *see* Fed. R. Civ. P. 26(g)(1), to identify potential witnesses before a substantial opportunity for discovery, such an argument furnishes no basis for Plaintiff to continue to obfuscate the identities of any supporting fact witnesses and thereby frustrate Defendants' ability to conduct discovery in and informed and efficient fashion. "Consistent with the objective of facilitating trial preparation, Rule 26 requires a party to supplement its mandatory disclosures 'at appropriate intervals' if that party 'learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery or in writing.'" *Sender,* 225 F.R.D. at 653(quoting Fed. R.

Civ. P. 26(e)(1)).  Plaintiff has now had nearly six months of discovery in this case to further investigate his claims and identify any supporting witnesses.  Particularly where it is now clear that many of the persons identified by Plaintiff, including the so-called "confidential witnesses" to whom key allegations in the Complaint were attributed, will not support, and indeed stand ready to refute Plaintiff's claims, Plaintiff should be required immediately amend his disclosures to identify the witnesses, if any, that he reasonably contends will actually support his fraud claims and the substance of testimony any such witnesses will offer.  Defendants need such information promptly in order to make informed decisions regarding use of their allotted depositions and allocation of resources in the remaining time for fact discovery.  In addition, such information is critical to Defendants' assessment of Plaintiff's request to further expand the number of depositions each side may take, which in turn will have further significant implications on both parties' allocation of resources in the remaining discovery period.

　　　Accordingly, Defendants request a Rule 16 conference to address these and any other issues required to allow for appropriate planning and execution of fact discovery during the remaining allotted period.

## IV.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reopen proceedings in the case and convene a Rule 16 conference to address the issues raised herein.

Dated:  September 25, 2009.

*s/ Michael R. Smith*
Michael R. Smith
Georgia Bar No. 661689
Benjamin Lee
Georgia Bar No. 443082
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521
404.572.4600 (Telephone)
404.572.5100 (Facsimile)
*mrsmith@kslaw.com*
*blee@kslaw.com*

*Attorneys for Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 7.1(D) of the Local Rules of the Northern District of Georgia, the undersigned counsel for Defendants hereby certifies that the foregoing document was prepared in a font and point selection approved by this Court and authorized in Local Rule 5.1(C).

*s/ Michael R. Smith*
Michael R. Smith
Georgia Bar No. 661689

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| Michael J. Gorby | *mgorby@gorbypeters.com* |
| Mary Donne Peters | *mpeters@gorbypeters.com* |
| GORBY, PETERS, & | |
| ASSOCIATES, P.C. | |
| Two Ravinia Drive, Suite 1500 | |
| Atlanta, GA 30346-2104 | |
| | |
| Merrill G. Davidoff | *mdavidoff@bm.net* |
| Michael Dell'Angelo | *mdellangelo@bm.net* |
| Lane L. Vines | *lvines@bm.net* |
| BERGER & MONTAGUE, P.C. | |
| 1622 Locust Street | |
| Philadelphia, PA 19103-6365 | |
| *Attorneys for Lead Plaintiff Robert A. Brown* | |

This 25th day of September, 2009.

              *s/ Michael R. Smith*
              Michael R. Smith
              Georgia Bar No. 661689

              *Attorney for Defendants Steven F. Herbert, Douglas K. Freeman, James P. Gross, Thomas H. Muller, Jr., Eula L. Adams, and David W. Johnson, Jr.*