IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____
                                    )
IN RE NETBANK, INC.                 )    Civil Action No.
SECURITIES LITIGATION               )    1:07-cv-2298-BBM
_____)

**DEFENDANTS' MEMORANDUM IN RESPONSE
TO LEAD PLAINTIFF'S MOTION TO REOPEN CASE
AND REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO REOPEN CASE AND FOR RULE 16 CONFERENCE**

Michael R. Smith (Georgia Bar No. 661689)
*mrsmith@kslaw.com*
Benjamin Lee (Georgia Bar No. 443082)
*blee@kslaw.com*
1180 Peachtree Street, NE
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5100

*Attorneys for Defendants*

I.  **INTRODUCTION**

Defendants agree that this case should be reopened and a conference should be convened to address pressing discovery issues, most notably Plaintiff's overbroad Rule 26(a)(1) disclosures through which Plaintiff seeks to impose unwarranted discovery costs on Defendants and attempt to avoid Defendants discovery of any ostensible "support" for Plaintiff's claims.

Plaintiff's requests to vastly expand the deposition and written discovery he may take in this case, however, should be denied.  Plaintiff's insistence that he should be permitted to take "special" depositions of his own "confidential witnesses" and propound additional "special" interrogatories beyond the number authorized by the Federal Rules to explore the "confidential witnesses" across-the-board denunciation of allegations attributed to them is all but self-defeating. Rather than creating credibility issues as to the confidential witnesses or defendants, as Plaintiff suggests, the under-penalty-of-perjury sworn statements executed by each of the so-called confidential witnesses (the "Witness Statements"), if anything, raise grave doubts regarding Plaintiff's candor and credibility as well as the diligence and sufficiency of the investigation he claims to have made – and was required by the Federal Rules and The Private Securities Litigation Reform Act of 1995 (the "Reform Act") to have made – *before* filing his

Complaint. Plaintiff should not be rewarded with increased discovery for manipulating, twisting, presenting out of appropriate context, or at the very least failing to adequately vet the accuracy of allegations attributed to the confidential witnesses.

Nor is Plaintiff's request to build in an additional 10 depositions per side above the fifteen – already five more than the Federal Rules contemplate – presently allotted under the operative Order warranted at this juncture. To date, the only depositions taken have been of Plaintiff and two experts, and Plaintiff has fourteen remaining unused depositions. Plaintiff's claimed need for additional depositions is, at best, wholly speculative at this stage. In addition, less than two months are left in the fact discovery period. Were the number of depositions allotted each side increased as Plaintiff requests, and even without the further "special depositions" Plaintiff has requested, the parties would have to take a deposition virtually every day of the remaining fact discovery period. There is currently no indication that the inordinate expense, expenditure of resources, and likely scheduling nightmares that would entail are warranted.

Finally, and although not substantively addressed in his brief, Plaintiff's accusations that Defendants have engaged in "gamesmanship" or other improper conduct are without merit. Contrary to Plaintiff's accusations that Defendants'

prior motion was to "preempt" Plaintiff's motion or gain "tactical advantage," Defendants filed their own motion to reopen the case and convene a Rule 16 conference in light of the need to promptly address Plaintiff's obfuscation of the factual bases, if any, for his claims, as evidenced by, among other things, the Witness Statements.

Plaintiff's insinuation that Defendants' contact of the so-called "confidential witnesses" was somehow inconsistent with the parties' agreement to stay formal discovery in the case pending completion of recent mediation efforts is likewise wholly without merit. Defendants' contact of the "confidential witnesses," whom Plaintiff stubbornly refused to identify – despite clear precedent from this Court, including a 2004 Order directing the same law firm representing Plaintiff in this case to identify confidential witnesses – until compelled to do so by the Court's August 7, 2009 Order in this case, did not entail the use of any discovery device. Nor did the parties' agreement to stay discovery prevent the Defendants from continuing their investigation of the factual bases (or, more appropriately, the lack thereof) for Plaintiff's claims, including by contacting the "confidential witnesses" to ascertain whether they stood behind the allegations attributed to them in the Complaint, which they clearly did not. Obviously, Defendants' investigation concerning whether the confidential witness cited in the Complaint would in fact

3

profess to support Plaintiff's claims was necessary to the planned efforts to attempt to mediate the case. Indeed, without first undertaking such investigation, Defendants could not possibly ascribe a reasoned settlement value to the case.

In addition, Defendants' confrontation of Plaintiff with the Witness Statements was entirely appropriate. Although Defendants have not filed a Rule 11 motion, the Witness Statements, at minimum, raise serious concerns regarding Plaintiff's good faith in his attribution of allegations to the confidential witnesses. It was Plaintiff's inclusion of the now thoroughly discredited confidential witness allegations in his Complaint (in support of his successful effort to survive a motion to dismiss) that was improper, and it is Plaintiff, by continuing to advance these allegations and claims "supported" solely thereby, who is attempting to impose undue litigation costs on Defendants.

## II. ARGUMENT AND CITATION OF AUTHORITIES

### A. Plaintiff's Requests For Additional "Special" Discovery Concerning His Own Unsupported "Confidential Witness" Allegations Should Be Denied.

Remarkably, Plaintiff asks the Court to award him an additional six "special" depositions over and above the number of depositions allotted to Defendants in which Plaintiff proposes to depose his own "confidential witnesses," whom Plaintiff cited in his Complaint as the purported sources for the allegations

contained in paragraphs 93, 104-06, 110, 112-13, 115, 118, 120, 131, 157-59, 160-62, 192-93, 218-19, 227, 279, 285, 289, 308, and 309 of the Complaint.  Although Plaintiff asked the Court to rely on information allegedly supplied by these initially un-named individuals in sustaining the legal sufficiency of his allegations under the governing heightened pleading standards of the Reform Act, Plaintiff himself now claims to have "serious questions about the credibility" of his own purported "confidential witnesses."

The impetus for Plaintiff's sudden doubt regarding his own witnesses' "credibility" is that, after seeing *for the first time* the allegations attributed to them in the complaint, the confidential witnesses have unanimously and unambiguously disavowed those allegations as "[in]accurate" and presenting a "misleading impression of [their] views" and confirmed that they are unaware of *any* basis for Plaintiff's claims that the Defendants' (or anyone at NetBank) made false or misleading statements to investors or committed any acts of securities fraud.  *See* Docket Nos. 115-7 - 115-12.  Even as Plaintiff attempts to minimize the obviously detrimental impact that the confidential witnesses' wholesale rejection of the allegations attributed them has on Plaintiff's already shaky claims, he contends that he should be allowed to take "special" depositions of each confidential witness, plus an additional "special" deposition of Defendant Herbert, to explore the

"credibility" issues that Plaintiff insists have now arisen as to the confidential witnesses.[1]

### 1. The Witness Statements call into question Plaintiff's credibility, not that of the confidential witnesses or the Defendants.

Lost in Plaintiff's self-righteous and misguided questioning of the credibility of his own purported witnesses are the substantial questions concerning Plaintiff's own credibility, or at the very least the diligence and sufficiency of the investigation he and his counsel claim to have undertaken prior to filing Plaintiff's Complaint.  *See* Compl. ¶ 16.  Plaintiff spends several pages of his brief attempting to argue that the Witness Statements are of no moment, Pl. Br. at 13-17, but that contention is impossible to square with the stark reality that each confidential witness described the allegations attributed to him or her as "[in]accurate" and "misleading."  Docket Nos. 115-7 - 115-12.  Moreover, just as he apparently did in selectively quoting (or misquoting) snippets of the confidential witnesses' discussions with his investigators when crafting the Complaint, Plaintiff cherry-

---

[1] Plaintiff also proposes a "special" deposition of his investigator, Donald Richards.  To the extent that the Court is inclined to authorize "special" depositions relating to the "confidential witnesses," Defendants should be permitted to depose Mr. Richards and anyone else involved in communications with the "confidential witnesses" on Plaintiff's behalf without such depositions reducing total the number of depositions Defendants are permitted to take.

6

picks and attacks just a few nuggets from the Witness Statements, while ignoring other inconvenient portions thereof that directly and explicitly contradict Plaintiff's allegations and entirely negate his claims of "fraud."

For example, Ms. Cromley categorically rejected the allegation in paragraph 279 of the Complaint, that "the reserves that NetBank knew or should have known were necessary were not established." Docket No. 115-7 ¶ 5(d). **To the contrary,** Ms. Cromley swore under oath that:

> ***My view is that NetBank's reserves were always adequate and accurate when made, and when new information became available suggesting additional reserves were necessary, the necessary additions were made.***

*Id.* (emphasis added). Similarly, Mr. Cuthbertson specifically disclaimed various statements attributed to him in the Complaint relating to lending activities at Meritage:

> ***I disagree completely with the statement in paragraph 112 that Meritage "had little control over the quality" of its loans***. In fact, within the bounds of applicable lending laws and regulations, Meritage had complete control over the decision to approve or decline any application. In addition, Meritage had complete control over which brokers it chose to do business with. *Meritage had an internal quality assurance division and an internal fraud division that conducted regular audits of loan and broker performance, and if it was determined that a particular broker was consistently sending problem applicants to Meritage, Meritage would stop working with that broker.* ***On the whole, I believe that Meritage employed standards of loan underwriting and loan and broker performance review that were comparable to those of other lenders.***

Docket No. 115-10 ¶ 5(a) (emphasis added).

Mr. Cuthbertson also disavowed the allegations attributed to him in paragraph 285 of the Complaint. *Id.* ¶ 5(d). A side-by-side comparison of those allegations and Mr. Cuthbertson's reaction to them in his sworn statement is revealing:

> **Complaint ¶ 285**: At the same time, in addition to their stated belief in the increased risks, according to a confidential witness who, during most of the Class Period, was senior managerial executive of Meritage, the Defendants were aware of certain difficulties with subprime mortgage underwriting guidelines which resulted in NetBank taking back mortgages that it should not have been accepting.
>
> **Cuthbertson ¶ 5(d)**: *I am baffled by and completely disavow having provided any information to support the allegations in paragraph 285. I personally have no recollection or knowledge of any "difficulties with subprime mortgage underwriting guidelines which resulted in NetBank taking back mortgages that it should not have been accepting." Furthermore, I have never spoken with Steve Herbert, Thos Muller, Eula Adams, or David Johnson, and have had only very limited interaction with Jim Gross and Doug Freeman. I do not have any knowledge whatsoever concerning what, if anything, these men knew about any alleged "increased risks," "difficulties with subprime mortgage underwriting guidelines," or "NetBank taking back mortgages that it should not have been accepting."*

Docket No. 115-10 ¶ 5(d)(emphasis added).

Similarly, contrary to allegations sourced to Messrs. Ross and Brauch, respectively, purporting to attribute to "Defendants" knowledge that "if NetBank

8

could not be sold, it would fail," and that a sale of the entire company was "necessary," *see* Compl. ¶¶ 218-19, both confidential witnesses denied under oath holding a view that Defendants held such beliefs or knowledge at the times alleged. *See* Docket No. 115-9 ¶ 5; Docket No. 115-8 ¶ 8.

In addition to ignoring these and other elements of the Witness Statements explicitly contradicting Plaintiff's allegations in the Complaint, Plaintiff argues that portions of the Witness Statements in which the declarants disclaim personal knowledge of the information sourced to them do not undercut the allegations themselves. That argument holds no water. Indeed, it is hornbook law that confidential witness allegations are useful only to the extent that they "support the probability that a person in the position occupied by the source ***would possess the information alleged.***" *See* 1/29/2009 Order, Docket No. 47, at 14 (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 9.03[6][a][i] (3d ed. 2008)) (emphasis added); *In re Theragenics Corp. Sec. Litig.*, 105 F. Supp. 2d 1342, 1354-55 (N.D. Ga. 2000).

Finally, Plaintiff urges the Court to disregard portions of the Witness Statements disclaiming allegations that Plaintiff now contends "can be made based on extrinsic evidence." Pl. Br. at 15. As an initial matter, like the now-discredited confidential witness allegations, none of the "extrinsic evidence" cited in

9

Plaintiff's brief supports any claim that Defendants' statements to investors were materially false or misleading when made, much less made with scienter. More to the point, irrespective of the availability of other "extrinsic evidence" that Plaintiff contends supports his claims, the Witness Statements confirm that the allegations in the Complaint attributed to the confidential witnesses are without basis and should never have been included in the Complaint.

### 2. The Witness Statements do not warrant the requested expansion of discovery.

Although the Witness Statements unquestionably draw into question Plaintiff's allegations, and his credibility in advancing them, the Witness Statements do no warrant an award to Plaintiff of expanded "special" discovery. Plaintiff had the obligation to thoroughly vet his allegations, including those attributed to the "Confidential Witnesses" *before* filing the Complaint. Indeed the Reform Act includes a number of provisions, including mandatory Rule 11 review and heightened pleading requirements requiring particularized allegations of factual support for claims of misrepresentations and defendants' alleged culpable mental state, that were specifically designed to require plaintiffs to conduct such basic due diligence *prior to* leveling accusations of securities "fraud." *See* S. Rep. 104-98, 1995 WL 372783, at *8 (observing that reform measures were needed because "[a] complaint alleging violations of the Federal securities laws is easy to

craft and can be filed with little or no due diligence"). Plaintiff's apparent failure (at best) to adequately diligence allegations attributed to the confidential witnesses should not serve as a basis for expansion of discovery. Indeed, such a result would be doubly prejudicial to Defendants as it would encompass further unwarranted litigation and discovery costs in addition to those already imposed by Plaintiff's advancement of unsupported allegations attributed to the confidential witnesses in the Complaint, but since disavowed by their alleged sources.

Furthermore, Plaintiff's contention that he needs to "special[ly]" depose each of his confidential witnesses and Mr. Herbert, and issue an additional ten bonus interrogatories to each Defendant to probe the circumstances under which, according to Plaintiff, the confidential witnesses were "prevail[ed] upon" to execute the sworn Witness Statements disavowing the allegations attributed to them is absurd. Indeed, each Witness Statement is signed by its declarant under penalty of perjury and avers that it was "voluntarily" given – this in stark contrast to Plaintiff's own failure to share a written version of the allegations he attributed to each confidential witness before filing the Complaint. *See* Docket Nos. 115-7 - 115-12.

Should he now (belatedly) wish to conduct further investigation of his own witnesses or the circumstances under which each one came to thoroughly reject

and discredit the allegations attributed to him or her, Plaintiff is, of course, free to do so. However, he should be required to do so within the confines of available discovery presently set, and should not be awarded additional expanded discovery.

### B. Plaintiff Should Be Required To Supplement His Rule 26(a)(1) Disclosures.

In addition to raising the above-discussed questions concerning Plaintiff's good faith and diligence in preparing his Complaint and undermining his claims, the Witness Statements sworn to by the confidential witnesses (together with additional developments) have revealed that Plaintiff's 136-person list of individuals "likely to have discoverable information that [Plaintiff] may use to support his claims" is demonstrably overbroad, and includes a number of individuals (including each of the so-called confidential witnesses) who, far from supporting Plaintiff's claims will refute them. Plaintiff argues that his disclosures are consistent with the letter of Rule 26(a)(1), but they are clearly inconsistent with the Rule's purpose of to "help focus the discovery that is needed, and facilitate preparation for trial or settlement." *See, e.g.,* Advisory Committee Notes to 1993 Amendments to Rule 26(a). As another district court held in requiring a plaintiff to streamline his disclosures in strikingly-similar circumstances, "Rule 26(a)(1) disclosures must be sufficiently detailed to allow Defendants to make intelligent decisions regarding how they will efficiently use the limited number of depositions

permitted under the Rule 16 scheduling order." *Sender v. Mann*, 225 F.R.D. 645, 656 (D. Colo. 2004) (awarding sanctions where overbroad "laundry list" of potential witnesses in plaintiff's initial disclosures prevented defendants from making informed decisions regarding efficient use of their allotted depositions). Plaintiff's disclosures fail this test and should be revised.

Other than to argue that *Sender* is distinguishable based on a claimed (but unspecified) enhanced level of "diligence" by Plaintiff in this case, Plaintiff does not explain why the *Sender* court's rationale that the plaintiff should revise his disclosures so that defendants would not be unfairly put to "the choice of either requesting a substantial number of additional depositions, with all of the additional costs, or hoping that they correctly guessed which of the approximately 300 [witnesses] would ultimately testify at trial," *id.* at 655, should not control here.

Furthermore, Plaintiff's suggestion that Defendants should simply assent to Plaintiff's demand to increase the number of depositions allotted to each side is untenable. First, even with twenty-five depositions per side, Defendants would still be unfairly put to the Hobson's choice of trying to guess which, if any of the one hundred thirty-six individuals indentified by Plaintiff thus far might actually purport to have information supporting Plaintiff's claims. Second, requiring Defendants to ferret out any witnesses who will attempt to support Plaintiff's

13

claims through expanded depositions would impose precisely the undue discovery costs that Defendants rightfully seek to avoid in asking Plaintiff to appropriately revise his patently overbroad disclosure.

### C. The Number Of Total Depositions Allotted To Each Side Should Not Be Expanded At This Juncture.

Thus far only the Plaintiff and two experts have been deposed; Plaintiff has fourteen allotted depositions remaining; and less than two months remain for fact discovery. Plaintiff's requested expansion of the allotted number of deposition would call for a deposition to be taken on nearly every remaining day of fact discovery even without the additional "special depositions" of the confidential witnesses. At this stage, there is no indication that such an expansion, or the enormous increased discovery costs it would entail, is warranted. As such, Plaintiffs request that his allotted depositions be more than doubled from fifteen (already more than the Federal Rules provide) to twenty-five, plus seven "special" depositions, plus extra expert depositions, should be denied as this time.

Later developments as discovery progresses, including (critically) amended disclosures from Plaintiff identifying witnesses (if any) who purport to have information supporting Plaintiff's claims, may suggest a need to increase the number of depositions allotted to each side.

### D. Defendants Have Made Appropriate Rule 26(a)(1) Disclosures.

Finally, Plaintiff's suggestion that Defendant's Rule 26(a)(1) disclosures are inadequate falls flat. Plaintiff argues unconvincingly that Defendants' reference to individuals whom Plaintiff might identify in his disclosures was improper. That argument ignores that, notwithstanding their certainty of the lack of support for Plaintiff's claims that they "defrauded" investors, Defendants could not know which individuals Plaintiff might claim would support such claims until receiving appropriate disclosures from Plaintiff. Indeed, at the time that Defendants were required to make their Rule 26(a)(1) disclosures, Plaintiff had filed a complaint attributing allegations against Defendants to a number of un-named "confidential witnesses," all of whom have since rejected the allegations attributed to them. Before Plaintiff finally identified these individuals (upon being compelled by the Court to do so), Defendants could not have known their identities and could not have known with the operative "one hundred percent" certainty (*see Frazier v. Layne Christensen Co.,* 370 F. Supp. 2d 823, 827-28 (W.D. Wis. 2005)) that these so-called "confidential witnesses" would actually support Defendants defenses rather than Plaintiff's claims.

In addition, Defendants have adequately identified the subject matter of knowledge of each individual identified in their Rule 26(a)(1) disclosures, have

supplemented such disclosures to provide contact information for individuals identified therein, and have confirmed for Plaintiff that their Rule 26(a)(1) disclosures were made on behalf of all Defendants. Plaintiff's accusations of misconduct by Defendants cannot withstand scrutiny and should not distract the Court from Plaintiff's abuses.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reopen the case, convene a discovery conference, and grant the relief requested in Defendants' motion to reopen the case. Defendants request, however, that the Court deny Plaintiff's requests for expanded discovery.

Dated: October 20, 2009.

*s/ Michael R. Smith*
Michael R. Smith
Georgia Bar No. 661689
Benjamin Lee
Georgia Bar No. 443082
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309-3521
404.572.4600 (Telephone)
404.572.5100 (Facsimile)
*mrsmith@kslaw.com*
*blee@kslaw.com*

*Attorneys for Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 7.1(D) of the Local Rules of the Northern District of Georgia, the undersigned counsel for Defendants hereby certifies that the foregoing document was prepared in a font and point selection approved by this Court and authorized in Local Rule 5.1(C).

*s/ Michael R. Smith*
Michael R. Smith
Georgia Bar No. 661689

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Michael J. Gorby                    *mgorby@gorbypeters.com*
Mary Donne Peters                   *mpeters@gorbypeters.com*
GORBY, PETERS, &
ASSOCIATES, P.C.
Two Ravinia Drive, Suite 1500
Atlanta, GA 30346-2104

Merrill G. Davidoff                 *mdavidoff@bm.net*
Michael Dell'Angelo                 *mdellangelo@bm.net*
Lane L. Vines                       *lvines@bm.net*
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103-6365

*Attorneys for Lead Plaintiff Robert A. Brown*

This 20th day of October, 2009.

                         *s/ Michael R. Smith*
                         Michael R. Smith
                         Georgia Bar No. 661689

                         *Attorney for Defendants Steven F. Herbert, Douglas K. Freeman, James P. Gross, Thomas H. Muller, Jr., Eula L. Adams, and David W. Johnson, Jr.*