IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____
                                        )
IN RE NETBANK, INC.                     )     Civil Action No.
SECURITIES LITIGATION                   )     1:07-cv-2298-BBM
_____ )

## REPLY MEMORANDUM
## IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION

Michael R. Smith (Georgia Bar No. 661689)
*mrsmith@kslaw.com*
Benjamin Lee (Georgia Bar No. 443082)
*blee@kslaw.com*
1180 Peachtree Street, NE
Atlanta, GA 30309
Tel:  (404) 572-4600
Fax: (404) 572-5100

Attorneys for Defendants

## I.    INTRODUCTION

Because the record clearly precludes a finding that Plaintiff may rely on the fraud-on-the-market presumption to show that individualized issues of proof of reliance will not predominate, the August 7, 2009 Order granting class certification was clear error.  The Order's refusal to "delve into the merits of the case, and entertain the parties' battle of the experts," Docket No. 106 at 39, on critical questions relevant to the fraud-on-the-market analysis and its unquestioning acceptance of Plaintiff's "prima facie" showing, *id.* at 37, while disregarding contrary record evidence fails to satisfy the rigorous analysis required under Rule 23.  The Order should be reconsidered, and class certification should be denied.

## II.    ARGUMENT

### A.    The Shaked Report Does Not "Moot" Defendants' Motion.

Plaintiff's lead argument – that Defendants' motion is "moot" because the eleventh-hour Shaked Report supplied "independent" and unchallenged evidence of market efficiency – cannot pass the red face test.  Plaintiff submitted the Shaked Report *over two months* after filing his motion for class certification in a last-ditch effort to rehabilitate Miller after Defendants had pointed out the fatal flaws in Miller's analysis in a *Daubert* motion.  The contention that Defendants "attribute no error relating to the Shaked Report" other than to point out that it was grossly

untimely, is clearly inaccurate. Defendants' reconsideration brief makes clear that even if the belated Shaked Report were treated as timely submitted "support" for Plaintiff's class certification motion,[1] the Report (1) left unaddressed key deficiencies in the Miller Report that undercut Plaintiff's claims of market efficiency, and (2) together with Mr. Miller's Rebuttal Report, supplied additional evidence precluding any finding that the market for NetBank stock was efficient during the proposed Class Period. *See* Docket No. 108-2 at 14-18.

Critically, none of Dr. Shaked, Dr. Wyner (another of Plaintiff's last-minute market efficiency rehabilitation experts), or Miller in his Rebuttal Report even attempted to correct Miller's *admissions* that: (1) the market for NetBank's stock during the class period failed to satisfy even the basic "weak form" of market efficiency; and (2) NetBank's stock price was disproportionately impacted by reports in one Atlanta newspaper (as compared to other news sources like SEC filings and press releases), *even when the newspaper was simply repeating information that had been previously reported in other news sources*. *Id.* at 15. Each of those admissions precludes a finding that the market for NetBank stock was efficient, *id.* at 14-15; Docket No. 104-3 at ¶¶ 6-16, and therefore prevents

---

[1] Per Rule 6(c)(2), "[a]ny affidavit supporting a motion must be served *with* the motion." Fed. R. Civ. P. 6(c)(2) (emphasis added).

application of the fraud-on-the-market reliance presumption, without which no class can be certified. *C.f. Desai v. Deutsche Bank Sec. Ltd.,* 573 F.3d 931, 942 (9th Cir. 2009) (concession that market was inefficient was "fatal" to certification).

Plaintiff's argument that Defendants selectively quote Mr. Miller's admission regarding weak form efficiency while "ignoring" Miller's statement that "semi strong would be the correct description," Docket No. 128 at 20, misses the point. If what Mr. Miller was attempting to articulate was his view that the market for NetBank stock during the Class Period was semi-strong from efficient, but not weak from efficient, such a view is internally inconsistent and nonsensical and reflects Mr. Miller's lack of sufficient grasp of market efficiency to be qualified to give expert opinion testimony on the subject. *See* Docket No. 104-3 at ¶¶ 6-16. In any event, even after Defendants pointed out the fatal admission of weak form inefficiency (which necessarily negates *any* form of efficiency, *id.*), neither Mr. Miller nor any of Plaintiff's other experts attempted to withdraw or correct the admission. Nothing in Dr. Shaked's Report suffices to support a finding of market efficiency in the face of Miller's contrary admission. *See Desai,* 573 F.3d at 942.

In addition, the analysis through which Dr. Shaked attempted to show that NetBank's stock price responded to news – the widely acknowledged "most important factor" in any market efficiency analysis – was woefully insufficient to

satisfy Plaintiff's burden of proof. *See* Docket No. 108-2 at 18; Docket No 104-3 at ¶¶ 25-29. Like Mr. Miller, Dr. Shaked sought to demonstrate a price response to news by citing examples of days on which declines in NetBank's stock price coincided with public reports of information pertaining to the Company. *See* Docket No. 94-19 at ¶¶26-55. However, as Defendants' expert Dr. Tabak demonstrated, Dr. Shaked's analysis, at best, showed only an irregular and inconsistent relation between NetBank's stock price movements and the release of "news" about the Company, with the stock price *failing* to respond to news on one-third of the dates examined. *See* Docket No 104-3 at ¶¶ 25-29. Like Mr. Miller's deficient initial report, the Shaked Report demonstrated only that NetBank's stock price *sometimes* may have responded to news about the Company, but not that it did so in the consistent, reliable manner of an "efficient" market. *Id.* at ¶¶ 21-29.

For all of the above reasons, the Shaked Report fails to furnish adequate "independent" support for a finding of market efficiency and cannot supply a basis to avoid the clearly required reconsideration of the Order granting class certification. Deliberate or not, Plaintiff's spurious insinuation that Defendants claimed "no error relating to the Shaked Report" simply because Defendants have not yet filed a motion challenging the *admissibility* of Dr. Shaked's opinions is a red herring. If admissible, Dr. Shaked's analysis tends to *undercut* rather than

support a finding of market efficiency, for the reasons stated above and in Defendants' reconsideration brief and sur-reply in opposition to the motion for class certification. Thus, Defendants' decision not to continue playing expert witness "Whac-A-Mole" by moving to exclude the patently untimely Shaked Report prior to class certification cannot possibly "doom" Defendants' motion for reconsideration. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 323 (3d Cir. 2009) ("[O]pinion testimony should not be uncritically accepted as establishing a Rule 23 requirement merely because the court holds the testimony should not be excluded under *Daubert* or for any other reason."); *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) (rejecting argument that "an expert's testimony may establish a component of a Rule 23 requirement simply by being not fatally flawed"). Nothing about the Shaked Report "moots" the motion.

### B.    The Order's Lack Of "Rigorous Analysis" Of Market Efficiency And Materiality Was Clear Legal Error.

Plaintiff's effort to defend the August 7, 2009 Order as embodying the required "rigorous analysis" of all factors relevant to Rule 23's requirements is equally unconvincing. Despite mentioning the "rigorous analysis" standard, Docket No. 106 at 3, and acknowledging Plaintiff's burden to demonstrate both market efficiency and the materiality of the alleged misrepresentations in order to invoke the *rebuttable* fraud-on-the-market reliance presumption, *id.* at 18, the

Order ultimately failed to weigh the competing record evidence for and against market efficiency and materiality. Instead, the Order accepted Plaintiff's "prima facie" showing of market efficiency as sufficient to satisfy Plaintiff's burden despite the numerous glaring deficiencies in Plaintiff's proffered "evidence" of same, *id.* at 37, and failed to make any finding at all that the record evidence showed that the alleged misstatements were material, *id.* at 39 (finding that Plaintiff "has met his burden of demonstrating that the market for NetBank securities was efficient" but making no finding on materiality).

> **1.  Rather than conducting a "rigorous analysis" of market efficiency, the Order accepted Plaintiff's "prima facie" showing while ignoring overwhelming contrary evidence.**

In their papers opposing class certification, Defendants pointed out that the record overwhelmingly precluded a finding that the market for NetBank stock was efficient during the Class Period. For starters, the sole purported market efficiency "evidence" submitted with Plaintiff's class certification motion was the Miller Report, which fails the admissibility standards of Federal Rule of Evidence 702 and should have been excluded, leaving Plaintiff with *no* evidentiary support on market efficiency. *See* Docket Nos. 78 & 98. Given that the Miller Report was the *only* evidence of market efficiency submitted with Plaintiff's motion for class certification and the Eleventh Circuit's clear directive that a court's findings

regarding satisfaction of Rule 23's requirements (which, in this case, required a finding of market efficiency) "must find support in the *evidence* before the court," *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (emphasis added), the Order's failure to decide the threshold issue of the Miller Report's admissibility was clear error. *See In re Hydrogen Peroxide*, 552 F.3d at 320 ("[A] district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the [class certification] requirements.").

Even setting aside the failure to address the threshold issue of the admissibility of the Miller Report, the record cannot support a finding of market efficiency, and the Order, therefore, was clear error. In addition to Mr. Miller's fatal (and neither withdrawn nor corrected) admissions of weak form inefficiency and the disparate impact of reports in the *Atlanta Journal-Constitution* (even *repetitive* reports of *old* news) on NetBank's stock price, the examples through which Mr. Miller and Dr. Shaked attempted to demonstrate that NetBank's stock price responded to news, at best, showed only that it did so irregularly and incompletely. *See supra* at 4. The record evidence also reflected that NetBank's stock price exhibited "negative autocorrelation" – a predictable pattern of day-to-day reversals – that could have been exploited to generate abnormal investment

returns of up to 70% during the Class Period, another hallmark of market inefficiency. *See* Docket No. 108-2 at 16; Docket No. 104-2 at 10-11.

The Order brushed aside the above contra-efficiency evidence, acknowledging, but refusing to "engage in the parties' battle of the experts" concerning whether the record showed that NetBank's stock price *actually* responded promptly to the release of news. Docket No. 106 at 36. Expressly refusing to resolve the conflicting expert opinions, the Order curtly observed that Defendants' arguments on the cause-and-effect factor were "unpersuasive," *id.,* and "insufficient to overcome a prima facie showing of market efficiency," *id.* at 37, presumably based on other market efficiency factors.

Defendants respectfully submit that the Order's acceptance of Plaintiff's "prima facie" showing without "delv[ing] into the merits" and "engag[ing] in the parties' battle of experts" to the extent necessary to make findings regarding Plaintiff's entitlement to the fraud-on-the-market reliance presumption unquestionably was clear legal error. As the Eleventh Circuit has held, the required "rigorous analysis" of the Rule 23 factors necessarily entails "examination of the factors necessary to a reasoned determination of whether a plaintiff has met [his] burden of establishing each of the Rule 23 class action requirements." *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984). With respect to critical and

vigorously disputed market efficiency factors such as whether:  (a) the analyses of Mr. Miller and Dr. Shaked in fact demonstrate that NetBank's stock price responded to news in a manner consistent with market efficiency; and (b) the substantial record evidence of exploitable negative autocorrelation in NetBank's day-to-day stock price returns during the Class Period compels a finding that the market was not efficient, the Court's refusal to resolve the conflicting expert opinions and "delve into" what it deemed "merits"-related questions was plainly inconsistent with the directive to rigorously analyze *all* factors bearing on whether Rule 23's requirements have been met, including by "consider[ing] the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied."  *Vega*, 564 F.3d at 1266.

That Defendants' critique of Plaintiff's market efficiency arguments focused on Plaintiff's failure to adduce evidence sufficient to support a finding that NetBank's stock price actually responded to the release of new information in a manner consistent with market efficiency, and did not contest various other factors (such as trading volume, market capitalization, and the number of analysts following NetBank's stock) that courts have recognized as relevant to the market efficiency analysis, does not diminish the Order's clear legal error in failing to grapple with the substantial evidence against the "price response" element.  The

consensus among courts is that the price response factor is clearly the most important consideration in an analysis of market efficiency. *See, e.g., Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 207 (2d Cir. 2008) ("Evidence that unexpected corporate events or financial releases cause an immediate response in the price of a security has been considered the most important *Cammer* factor.") (quotations omitted); *In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 512 (1st Cir. 2005) (similar); *Cammer v. Bloom*, 711 F. Supp. 1264, 1287 (D.N.J. 1989) (the price response factors is "the essence of an efficient market and the foundation for the fraud on the market theory"). And there is good reason why that is so. Although the presence of other recognized factors might foster conditions under which a market potentially *could* operate efficiently (*i.e.,* rapidly incorporate available information into a stock's price), the ultimate question is whether the market *did in fact* do so. *See Cammer*, 711 F. Supp. at 1287; Docket No. 76-2 at ¶¶ 11-13. As such, Plaintiff's effort to excuse the Order's disregard of the overwhelming contrary evidence on the price response factor on the grounds that Defendants did not contest *other* ancillary efficiency factors falls flat. The Order's finding of market efficiency in the face of overwhelming price response evidence *against* efficiency was clear legal error.

### 2.    The Order lacked any analysis, much less a rigorous one, regarding materiality.

Plaintiff misstates the law in arguing that he was not required to demonstrate the materiality of the alleged misrepresentations in order to invoke the fraud-on-the-market presumption.  Opp. at 23.  Indeed, the August 7, 2009 Order expressly acknowledges that requirement, stating that "[p]ursuant to the fraud-on-the-market theory, a plaintiff is entitled to a rebuttable presumption of reliance *if* he can show: (1) the defendant made public material misrepresentations . . . ."  Docket No. 106 at 18 (emphasis added) (citing *Greenberg v. Crossroads Sys., Inc.,* 364 F.3d 657, 661 (5th Cir. 2004)); *see also Basic, Inc. v. Levinson*, 485 U.S. 224, 248 n.27 (1988).  With respect to materiality, the Order states only that "[t]he Plaintiffs *allege* that the Defendants in this case 'made material misrepresentations or omissions in public statements, which operated as a fraud on the market.'"  Docket No. 106 at 18 (emphasis added).  *See also, Id.* at 40 n.14 (observing that "this court has already held that Mr. Brown made a sufficient proximate causation showing in its January 29, 2009 Order denying the Defendants' Motion to Dismiss," again relying only on allegations).  At the class certification stage, however, it is error to rely on mere allegations rather than evidentiary proof.  *See Vega*, 564 F.3d at 1267 ("a district court's factual findings [regarding Rule 23's requirements] must find support in the evidence before it"); *Gariety v. Grant Thornton, LLP,* 368 F.3d 356,

365 (4th Cir. 2004) ("If it were appropriate for a court simply to accept the allegations of a complaint at face value in making class action findings, every complaint asserting the requirements of Rule 23(a) and (b) would automatically lead to a certification order, frustrating the district court's responsibilities for taking a 'close look' at relevant matters, for conducting a 'rigorous analysis' of such matters, and for making 'findings' that the requirements of Rule 23 have been satisfied.") (citations omitted).  The Order's failure to make any *finding* that Plaintiff had shown the materiality of the alleged misrepresentations constitutes clear legal error under the standard that the Order itself articulated. Reconsideration is required for that reason alone.  *See Vega* 564 F.3d at 1266 (district court must "examine whether the factual record provide[s] the district court with an adequate basis to find" that Rule 23's requirements are satisfied).

The Second Circuit's decision in *In re Salomon Analyst Metromedia Litigation*, 544 F.3d 474 (2d Cir. 2008) did not hold as Plaintiff claims, Opp. at 23, that plaintiffs need not establish materiality in order to apply the fraud-on-the-market presumption.  *See* 544 F.3d at 484 (acknowledging plaintiff's burden to show that the challenged misrepresentation was "material").  The related, but distinct issue addressed in *Salomon* was whether the requirement to show materiality placed on plaintiffs a burden to show that the alleged

misrepresentations had a causal effect on the market price of the stock in question. *See* 544 F.3d at 479, 482-83.

The distinction is a fine one and the subject of some debate among the Circuits. The Fifth Circuit has held that, in the context of market efficiency, establishing that the challenged statements were "material" should include a showing of impact on the stock price and expressly requires plaintiffs to demonstrate that alleged misrepresentations *actually moved* the stock's price in order to benefit from the fraud-on-the-market presumption at class certification. *See Oscar Private Equity Invs. v. Allegiance Telecom, Inc.,* 487 F.3d 261, 265, 269 (5th Cir. 2007). In other contexts, this Court and other Circuit Courts of Appeals have likewise recognized the nexus between materiality and price impact. *See In re Homebanc Corp. Sec. Litig.,* --- F. Supp. 2d ----, 2010 WL 1524836, at \*12 (N.D. Ga. Apr. 13, 2010) ("[T]hough not dispositive, the absence of any increase in Homebanc's stock price following the purportedly false statements undercuts the inference that the alleged misstatements were material."); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1425 (3d Cir. 1997) ("In the context of an 'efficient' market, the concept of materiality translates into information that alters the price of [a] stock."); *see also Oran v. Stafford,* 226 F.3d 275, 282 (3d Cir. 2000) (an efficient market's failure to promptly re-price stock upon disclosure of

information confirms, as a matter of law, that the information is not material); *No. 84 Employer-teamster Joint Council Pension Trust Fund v. America West Holding Corp.,* 320 F.3d 920, 948 (9th Cir. 2003) (same).

Unlike the Fifth Circuit, the Second Circuit in *Salomon* declined to hold that plaintiffs bear the burden to demonstrate that challenged misrepresentations impacted stock price in order to obtain benefit of the fraud-on-the-market presumption. *See* 544 F.3d at 483. Importantly, however, the Second Circuit held that the *rebuttable* nature of the presumption means that Defendants can rebut its operation prior to class certification by "any showing that severs the link between the alleged misrepresentation and the price," including by showing "the absence of a price impact." *Id.* at 484.

The Court's refusal to address Defendants' arguments rebutting the application of the fraud-on-the-market presumption by demonstrating the absence of any price impact resulting from the alleged misrepresentations, *compare* Docket No. 106 at 39-40 n.14 (declining to address Defendants' arguments concerning the absence of any causal connection between the alleged misrepresentations and the market price of NetBank stock), *with* Docket No. 76 at 17-25 (discussing lack of nexus between alleged "fraud" and stock price declines), likewise was clear error under *Saloman, Oscar Private Equity,* and the Eleventh Circuit's holding in *Vega.*

14

*See* 564 F.3d at 1267 ("plaintiff still bears the burden of establishing every element of Rule 23. and a district court's factual findings must find support in the evidence before it") (internal citation omitted).

Finally, Defendants respectfully submit that the Order's out-of-hand rejection of the standard espoused by our sister Fifth Circuit in *Oscar Private Equity* and several subsequent opinions, requiring a plaintiff seeking the benefit of the fraud-on-the-market presumption to come forward at the class certification stage with evidence showing that the alleged misrepresentations *actually moved* the market price of the stock, was clear error. The footnote in which the Order disposed of Defendants' argument could be summarized as: No other district court in this Circuit has yet applied that standard, and this Court will not be the first to do so. Docket No. 106 at 39-40 n.14. Defendants respectfully submit that an issue of such importance, particularly one on which the Eleventh Circuit has yet to speak, at minimum, merited some reasoned analysis. The Order's failure to supply any warrants reconsideration as to the "*Oscar*" issue as well as the others discussed herein.

## III.   CONCLUSION

The Court should grant Defendants' motion for reconsideration of the August 7, 2009 Order and deny class certification.

15

Dated:  April 23, 2010.                    *s/ Michael R. Smith*
                                           Michael R. Smith
                                           Georgia Bar No. 661689
                                           Benjamin Lee
                                           Georgia Bar No. 443082
                                           KING & SPALDING LLP
                                           1180 Peachtree Street N.E.
                                           Atlanta, GA 30309-3521
                                           404.572.4600 (Telephone)
                                           404.572.5100 (Facsimile)
                                           *mrsmith@kslaw.com*
                                           *blee@kslaw.com*

                                           *Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 7.1(D) of the Local Rules of the Northern District of Georgia, the undersigned counsel for Defendants hereby certifies that the foregoing document was prepared in a font and point selection approved by this Court and authorized in Local Rule 5.1(C).

<u>*s/ Michael R. Smith*</u>
Michael R. Smith
Georgia Bar No. 661689

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Michael J. Gorby           *mgorby@gorbypeters.com*
Mary Donne Peters       *mpeters@gorbypeters.com*
GORBY, PETERS, &
ASSOCIATES, P.C.
Two Ravinia Drive, Suite 1500
Atlanta, GA 30346-2104

Merrill G. Davidoff         *mdavidoff@bm.net*
Michael Dell'Angelo       *mdellangelo@bm.net*
Lane L. Vines               *lvines@bm.net*
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103-6365
*Attorneys for Lead Plaintiff Robert A. Brown*

This 23rd day of April, 2010.

*s/ Michael R. Smith*
Michael R. Smith
Georgia Bar No. 661689

*Attorney for Defendants Steven F. Herbert, Douglas K. Freeman, James P. Gross, Thomas H. Muller, Jr., Eula L. Adams, and David W. Johnson, Jr.*